[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
No lengthy exegesis of law or fact is necessary to dispose of this case. All of the operative facts are found in the parties' appraisals which are exhibits in the case, as supplemented by the testimony of their respective appraisers, which in each case tracked their respective written reports. The subject property is at 619 Danbury Road, Ridgefield.
The state's appraiser, Mr. Oles, concluded his appraisal on August 15, 1985 and found the total damages to be $65,000, which is the amount the state awarded when it took a ten foot strip of land and other rights at the front of the Red Lion Restaurant property in Ridgefield on March 5, 1986. Strange to say, Mr. Oles was not asked to update his appraisal to a period closer to the taking. This, in and of itself, casts serious doubt on the integrity of the state's case as will be seen later in this opinion.
Mr. Glendinning, the property owner's appraiser, found damages for the taking itself to be $71,700 and severance damages to the remainder of the parcel containing the Red Lion Restaurant, and parking for that restaurant, to be $159,300, for total damages of $231,000.
Mr. Glendinning properly used two of the recognized techniques of appraisal, the comparable sales approach and the income capitalization approach. The court substantially credits his testimony, without swallowing it whole hog, as honest and professionally reliable. His comparables were sound and showed the result of a lot of hard work and careful analysis. His capitalization of income approach, while still professionally reliable, was a little more fanciful and unreliable than his comparable sales approach. In general, he did not appear to be exaggerating his data or conclusions drawn from it. In certain instances, he was quite candid in discussing the limitations of certain aspects of his evaluation.
The key to his appraisal to this case was a comparable CT Page 5572 sale in the immediate vicinity of the subject property. The Red Lion property is on the west side of Route 7 about one-half mile south of the Danbury town line. It is generally rectangular in shape with a combined frontage of 500 feet plus or minus along Route 7 and Route 35. The total area is 3.785 acres. About 1.10 acres at the rear is steeply sloped and heavily wooded. The balance of the site, 2.685 acres, is level at grade.
The King Neptune Seafood Restaurant property at 665 Danbury Road is close to the Red Lion Restaurant on the north toward Danbury on the same side of Route 7. It consists of 2.326 acres of land and also slopes sharply up to the rear. The front two-thirds of the property is level at grade. The rear one-third is terraced and approximately ten feet above street level. It contained a popular restaurant as did the Red Lion property. A closer fit for a comparable could hardly be imagined.
On May 27, 1986 it was conveyed to Matgil Realty, Inc. for $1,000,000. Matgil was owned by the Pambianchi family, the auto dealers, from Ridgefield. One could question immediately the use of this sale for comparison with the Red Lion property if it were sold as a going restaurant, for King Neptune had a thriving and well known reputation as a seafood restaurant. It was purchased, however, for the land only for use as an auto dealership. This has not yet occurred.
Mr. Glendinning properly gave great weight to this comparable. The court noted at the outset of the trial that the disparity between the state's appraisal of $65,000 and the owner's of $231,000 was so great as to raise a serious question in the court's mind as to the integrity of the process in which we were involved.
This nagging question was resolved when Mr. Oles took the stand. He is a well qualified and respected appraiser as is Mr. Glendinning.
In truly remarkable and convincing testimony, Mr. Oles practically endorsed Mr. Glendinning's appraisal. He said he didn't have a lot of argument with Mr. Glendinning's comparables. He thought that Mr. Glendinning was more in the right on land values than he was. Glendinning, he said, had better dates on his comparables because they were closer to CT Page 5573 the taking date.
Mr. Oles first said only a three foot cut in the rear would be necessary to replace the 17 to 21 parking places lost. But on cross-examination, he agreed one would have to dig in further. He stressed that when the King Neptune deal closed at $10 a square foot, this had an influence on the damages at the Red Lion. He did not have this critical comparable because it happened after he made his appraisal in 1985. He concluded by saying that even with the handicaps of his appraisal ($46,200 for taking; $17,200 severance, rounded off at $65,000) the key difference between them lay in their disparity in considering the feasibility and cost of restoring the lost parking spots in that southwest corner of the Red Lion property.
The court, with counsel and the appraisers, viewed the Red Lion and King Neptune properties on June 3, 1993. The court was already quite familiar with both properties as a patron through the years. The state took 17 to 21 parking places in front of the Red Lion. Mr. Glendinning stated that it would be impossible to replace all of the parking in the rear area. He felt that unknown difficulties digging into the hillside and possibly erecting a retaining wall would seriously infringe on a possible buyer's favorable view of the value of the remaining land. Mr. Oles felt that it would be much easier to replace the lost parking and discounted both the hardship and the expense of digging into the hillside.
The court carefully looked over the disputed area. The previous parking for the restaurant in the southwest portion of the property ran right up to the steep hill of rear land. The court noted the old white lines for the far end of the parking area and it was almost entirely right at the foot of the hillside. To the north towards the left rear corner of the restaurant building there is a small triangular area that gives a little more flat space before the hill begins, but this is immaterial as far as the question before the court is concerned.
It is very clear that to put additional parking in this area it would have to be cut out of a very steep, rough, and risky hillside. It is strictly mountain goat country. A much deeper cut would be required than Mr. Oles suggested. CT Page 5574 The possible presence of ledge raises uncertainties of cost and feasibility. A monster retaining wall would certainly be required in the rear of the cut. All in all, the court concludes that it was not practical or economically feasible to attempt to put parking in a cutout of the hill.
It may have been helpful to have had a contractor's estimate of the cost of providing the additional parking but the court does not consider such testimony essential. I consider that the appraisers are sufficiently experienced to testify as to the probable effect of this unknown expense on a prospective buyer. Further, such a cost estimate would undoubtedly be contingent on the unknown cost of rock removal.
As a result of all of the testimony and the view, the court concludes that Mr. Glendinning was not only more persuasive on his comparables, but also closer to reality in his estimate of the cost and effect of the work necessary to put parking in that area. His appraisal of damages was fair and reasonable but somewhat on the high side, in view of his advocate's role in the case. The court concludes that the damages for the taking are $50,000 and the severance damages are $130,000 for a reassessment of damages of $180,000.
Despite all of the flattering things the court has to say about Mr. Glendinning's role in this case, I conclude that he is not shy about the value of his services as an appraiser when he seeks $7,500. The court awards $5,000 as an appraisal fee.
Judgment will enter in accordance with this opinion together with interest at the rate of 10 percent in accordance with General Statutes, Sec. 37-3c.
T. Clark Hull State Trial Referee